**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                                  :
BELINDA LOMBARDI,                 :
                                  :
              Plaintiff,          :
                                  :        Civil Action No. 05-3320 (JAG)
       v.                         :
                                  :        OPINION
COMMISSIONER OF SOCIAL            :
SECURITY ADMINISTRATION,          :
                                  :
              Defendant.          :
_____:
```

**GREENAWAY, JR., U.S.D.J.**


## INTRODUCTION

Belinda Lombardi ("Plaintiff"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g),[1] seeks

review of the Commissioner of Social Security Administration's ("Commissioner") decision

denying her application for Supplemental Security Income ("SSI") benefits.  Plaintiff argues that

the decision is not supported by substantial evidence and should be reversed, or, in the

alternative, that this Court should remand this claim to the Commissioner for reconsideration.

For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is

supported by substantial evidence and should be affirmed.

---

[1] These sections of the Social Security Act ("Act") provide that any individual may obtain
a review of any final decision of the Secretary of Health and Human Services ("Secretary") made
subsequent to a hearing to which he or she was a party.  The federal district court for the district
in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On January 28, 2002, Plaintiff filed an application for SSI benefits, pursuant to §§ 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A), respectively.[2]  (Tr. 20-22.)  Plaintiff's initial claim is based on her alleged disabilities due to systemic lupus erythematosus ("lupus") and thyroid problems.  (Tr. 13.)  After she filed her claim, she developed depression and anxiety.  (Id.)  Following the Commissioner's denial of Plaintiff's application on July 3, 2002 (Tr. 23-28), Plaintiff filed a request for reconsideration on July 11, 2002.  (Tr. 29.)  The denial was affirmed on January 3, 2003.  (Tr. 30-35.)  Subsequent to Plaintiff's request for a hearing, dated February 6, 2003 (Tr. 36), Plaintiff appeared before Administrative Law Judge Joel H. Friedman ("ALJ Friedman") on September 10, 2003.  (Tr. 13.)  ALJ Friedman issued a partially favorable decision on May 23, 2004, finding that Plaintiff was eligible for SSI benefits based upon her disabilities.  (Tr. 18.)  The following is a summary of his findings:

1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b).

3.    These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

.

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g).  "Tr." refers to said transcript.

5.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 416.927).

6.    The claimant had the residual functional capacity for sedentary work through August 31, 2002.  Starting September 1, 2002, due to her depression, she has lacked the residual functional capacity to perform more than a narrow range of sedentary work.

7.    The claimant is unable to perform any of her past relevant work (20 C.F.R. § 416.965).

8.    The claimant is a "younger individual" (20 C.F.R. § 416.963).

9.    The claimant has "a limited education" (20 C.F.R. § 416.964).

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. § 416.968).

11.   The claimant had the residual functional capacity to perform the full range of sedentary work through August 31, 2002 (20 C.F.R. § 416.967).

12.   Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.25 through August 31, 2002.

13.   The claimant was not under a "disability" as defined in the Social Security Act, at any time through August 31, 2002 (20 C.F.R. § 416.920(f)).

14.   Based upon the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant numbers which she can perform starting September 1, 2002. This finding is based upon Social Security Ruling 96-9p and the framework of the medical-vocational rules.

15.   The claimant has been under a disability as defined by the Social Security Act and Regulations since September 1, 2002, but not prior thereto.

(Tr. 17-18.)  Based on these findings, ALJ Friedman concluded that Plaintiff had been disabled

since September 1, 2002, under § 1614(a)(3)(A) of the Act, but not prior to that date based upon

his findings that Plaintiff could perform sedentary work available in the national economy.  (Tr.

3

18.)  On April 28, 2005, the Appeals Council denied Plaintiff's request for review of ALJ

Friedman's decision.  (Tr. 4-6.)  Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Plaintiff filed

the instant action, seeking reversal of the Commissioner's decision.


## STATEMENT OF THE FACTS

**A.**     **Background**

Plaintiff was born on October 28, 1971 and claimed disability on March 17, 1998.  (Tr.

20.)  She testified that she completed school up to the ninth grade, did not receive her GED, and

did not receive any other type of vocational training.  (Tr. 122-23.)  From 1991 to 1992, Plaintiff

worked at Newark International Airport for Continental Airlines in maintenance, and from 1992

to 1993, Plaintiff was employed by McDonald's where she worked the cash register, served

customers, and cleaned.  (Tr. 128.)  Since then, Plaintiff has not been employed.  (Tr. 129.)

Plaintiff's sole sources of income are Welfare and Medicaid benefits as well as food stamps.  (Tr.

124.)

**B.**     **Claimed Disabilities**

 Plaintiff stopped working in 1993, allegedly because she was constantly feeling tired (Tr.

129), and she claimed that she became disabled on March 17, 1998 due to lupus and thyroid

problems.  (Tr. 13.)  She testified that her condition has worsened since then (Id.), but does not

articulate how the lupus has disabled her.  The record indicates that Plaintiff complained of

suffering from significant weight fluctuation due to her thyroid problem  (Tr. 138-39).  Plaintiff

also complains that she experiences disabling physical pain and stiffness.  She testified that she

has been experiencing pain in both feet.  (Id.)  Plaintiff further testified that she has trouble

4

standing for more than five to 15 minutes at a time because of the pain in her feet.  (Tr. 134.)

She is also unable to sit down for more than five to 15 minutes at a time due to the pain it causes

to her back.  (Tr. 135.)  She also experiences pain in her hands twice each week, which causes

them to "twist when they hurt a lot."  (Id.)  Since filing her initial claim, she also testified to

suffering from anxiety and depression.  (Tr. 13.)  Due to her depression, she has been meeting

with a therapist regularly and has been prescribed Paxil, an anti-depressant.  (Tr. 135-36, 105)


**C.**   **Medical Evidence Considered by the ALJ**

The record indicates that the Plaintiff has been evaluated by physicians on several

occasions.

1.   Dr. Dominic Maiello's Examination

Plaintiff was examined by Dr. Dominic Maiello on January 4, and January 14, 2002.  (Tr.

82.)  Dr. Maiello noted that Plaintiff complained of suffering from joint pain for years but there

was very little swelling.  Plaintiff also told Dr. Maiello that she sometimes experienced stiffness

in the morning.  (Id.)  Dr. Maiello found Plaintiff to have a strength rating of 5/5 and a good

range of motion in her joints without any sign of swelling.  (Tr. 82, 71.)  Dr. Maiello concluded

that a skin rash, a positive nuclear antibody test, and other lab tests indicated that Plaintiff

suffered from lupus, with a possible overlap of rheumatoid arthritis.  (Tr. 82.)  However, Dr.

Maiello noted that the level of disability was "questionable."  (Tr. 83.)

2.   Dr. Francky Merlin's Examination

Dr. Merlin conducted his first consultative examination of Plaintiff on May 14, 2002.

(Tr. 84.)  Dr. Merlin noted that Plaintiff complained that for several years, she had been

experiencing pain in her hands and ankles, but only three months earlier did she "actually pay [sic] attention to it."  (Id.)  Plaintiff also told Dr. Merlin of having suffered from depression for the last 10 years.  (Id.)  Plaintiff told Dr. Merlin that she had crying spells, insomnia and loss of concentration.  (Id.)  Plaintiff denied harboring any suicidal ideation or suffering from any memory loss.  (Id.)  Dr. Merlin noted that Plaintiff was not taking any medication for her depression, was not examined or followed by a psychiatrist, and had never been hospitalized. (Id.)  Dr. Merlin opined that Plaintiff "appeared depressed."  (Tr. 85.)

A second consultative examination was conducted by Dr. Merlin on May 31, 2002.  (Tr. 77.)  Dr. Merlin noted that Plaintiff had normal station and gait, and had no difficulty standing up from the seated position or getting on and off the examining table.  (Id.)  Dr. Merlin also observed that Plaintiff had full use of both hands while dressing and undressing, as well as having no visible impairment in her grasping strength or manipulative functions.  (Id.)  Dr. Merlin also noted that there were no visible signs of pain in either the hands or ankles.  (Id.)  Dr. Merlin concluded Plaintiff is able to "sit, stand, walk, handle objects, hear, speak, travel, but cannot carry heavy objects."  (Tr. 78.)  Dr. Merlin also recommended Plaintiff be evaluated by a psychiatrist.  (Id.)

3.      Jersey City Medical Center Psychiatric Department Examination

Plaintiff was evaluated at the Jersey City Medical Center on September 23, 2002.  (Tr. 113-115.)  Plaintiff was diagnosed as suffering from depression and anxiety.  (Id.)

4.      Dr. Shaik Abubakar's Letter

On July 30, 2003, Dr. Abubakar wrote a letter stating that Plaintiff was under his care for bronchial asthma, depression, and lupus, and not able to work until further notice.  (Tr. 95.)

6

5.      <u>Dr. Anthony J. Candela's Examination</u>

On October 10, 2003, Plaintiff was seen by Dr. Candela for a comprehensive mental status evaluation.  (Tr. 104.)  Dr. Candela noted that Plaintiff had been seeing a psychiatrist and therapist regularly for depression and anxiety and was talking Paxil.  (Tr. 105.)  Plaintiff told Dr. Candela that she had been suffering from depression and anxiety ever since she had been diagnosed with lupus.  (<u>Id.</u>)  Plaintiff also told Dr. Candela that she had panic attacks approximately once or twice a week.  (Tr. 106.)  During these attacks, Plaintiff described experiencing her heart racing, sweating, shaking, and shortness of breath.  (<u>Id.</u>)

Dr. Candela administered a comprehensive mental status evaluation, the Beck Depression Inventory - II, Beck Anxiety Inventory, and informal tests and observation, and did a clinical interview.  (<u>Id.</u>)  According to Dr. Candela, Plaintiff scored within the moderate to extreme range on both the Beck Anxiety and Depression indexes, confirming a diagnosis of anxiety and depression.  (Tr. 107.)  Dr. Candela also noted that Plaintiff was not suicidal, although she had in the past occasionally thought about suicide.  (<u>Id.</u>)  Plaintiff was teary during the interview, her concentration was impaired, and she was extremely preoccupied.  (<u>Id.</u>)  Dr. Candela diagnosed Plaintiff as suffering from panic attacks without agoraphobia and chronic dysthymia, both moderately severe.  (Tr. 108.)

## DISCUSSION

**A.**     **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§ 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the

evidence and then determine whether there is substantial evidence to support the Commissioner's

decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-

finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.

Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir.

1984)).

In the determination of whether there is substantial evidence to support the

Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2)

the diagnoses and expert opinions of treating and examining physicians on subsidiary questions

of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family

and neighbors; (4) the claimant's educational background, work history and present age."

8

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.**      **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**     **The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[3]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

---

[3] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[4] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

---

[4] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of vocational factors, i.e., age, education level, work history, and residual functional capacity.  These guidelines reflect the administrative notice taken of the number of jobs in the national economy that exists for particular combinations of vocational factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him

12

for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing

responsibility on the claimant to show how a combination-effects analysis would have resulted in

a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2

(E.D. Pa. June 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined

effect of her impairments limited one of the basic work abilities").

    While Burnett involved a decision in which the ALJ's explanation of his step three

determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit

applies its procedural requirements, as well as their interpretation in Jones, to every step of the

decision.  See, e.g., Rivera v. Comm'r, No. 05-1351, 2006 U.S. App. LEXIS 2372, at *3 (3d Cir.

Jan. 31, 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and

analysis to allow for meaningful judicial review," but need not "adhere to a particular format."

Id.

## D.    **ALJ Friedman's Findings**

    ALJ Friedman applied the five-step sequential evaluation and determined that the

Plaintiff was disabled within the meaning of the Social Security Act and Regulations beginning

September 1, 2002.  (Tr. 17.)  ALJ Friedman found that Plaintiff satisfied the first step of the

evaluation process, because Plaintiff has not engaged in substantial gainful activity since the

onset of her alleged disability.  (Tr. 14.)  At step two of the evaluation, ALJ Friedman found that

Plaintiff has lupus and depression, "impairments that are severe within the meaning of the

Regulations."  (Tr. 15.)

    At step three, ALJ Friedman concluded that the lupus and depression did not meet or

equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P,

Regulations No. 4.  (Id.)  ALJ Friedman determined that with respect to listing 14.02, the criteria

13

for lupus were not met because the Plaintiff did not have any "significant, documented, constitutional symptoms involving any organ/body system and signs of severe fatigue, fever and malaise." (Id.) ALJ Friedman also found that Plaintiff did not satisfy any mental impairment listing because she did not have "marked restriction of activities of daily living or marked difficulties in maintaining social functioning, concentration, persistence or pace." (Id.) ALJ Friedman concluded that there was not sufficient evidence to conclude that, prior to September 1, 2002, Plaintiff had a severe mental impairment. (Id.)

At step four, ALJ Friedman examined whether Plaintiff "retains the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy." (Id.) At this step, the ALJ distinguished between the period with impairment – post-September 1, 2002 – and the period without impairment – prior to September 1, 2002. The ALJ concluded that, through August 31, 2002, Plaintiff maintained the capacity to perform a range of sedentary work. (Tr. 16.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(Id.) ALJ Friedman determined that Plaintiff's statements regarding her impairments and their impact on her ability to work were not entirely credible. (Tr. 15.) The ALJ observed that, in February 2002, Plaintiff was deemed capable of doing volunteer work that was assigned through Social Services. (Tr. 16.) During that same period, Plaintiff was examined by both Dr. Maiello and Dr. Merlin, who respectively questioned her level of disability and opined that she should only be restricted in carrying heavy objects. (Id.) ALJ Friedman concluded that prior to

14

September 1, 2002, Plaintiff had the residual functional capacity to perform sedentary work .
(Id.)

As of September 1, 2002, however, the ALJ found that Plaintiff experienced a significant

drop in residual capacity, and he assessed whether Plaintiff could perform any of her past

relevant work.

> The phrase "past relevant work" is defined in the Regulations at 20 C.F.R. §
> 416.965.  The work usually must have been performed within the last 15 years or
> 15 years prior to the date that disability must be established.  In addition, the work
> must have lasted long enough for the claimant to learn to do the job and meet the
> definition of substantial gainful activity.

(Id.)  The ALJ concluded that Plaintiff's past work as a cleaner and fast food worker had

"exertional demands that exceeded her established residual functional capacity" as of September

1, 2002.  (Id.)  In sum, ALJ Friedman held that Plaintiff was unable to perform her past relevant

work from September 1, 2002 forward.  (Id.)

At step five, ALJ Friedman considered Plaintiff's residual functional capacity, age,

education and work experience and found that at 32 years old, Plaintiff is a younger individual

(20 C.F.R. § 416.963), with a limited education, and has no transferable skills from any past

relevant work.  (Id.)  ALJ Friedman held that due to Plaintiff's ability to do a full range of

sedentary work up until September 1, 2002, she was not disabled under the Act and was able to

perform the demands of the full range of light work through August 31, 2002, pursuant to

Medical-Vocational Rule 201.25.  (Tr. 17.)  Starting September 1, 2002, ALJ Friedman found

that Plaintiff's residual functional capacity dropped to a narrow range of sedentary work due to

the nonexertional limitations imposed by depression.  (Id.)

Although nonexertional factors diminished the range of work Plaintiff could perform,

ALJ Friedman could not rely on the Medical-Vocational Rules as the basis of his decision

because the rules cannot be used in cases where there are nonexertional restrictions.  <u>Gilliland v.</u> <u>Heckler</u>, 786 F.2d 178 (3d Cir. 1986); <u>Jesurum v. Secretary</u>, 48 F.3d 114 (3d Cir. 1995); <u>Sykes v.</u> <u>Apfel</u>, 228 F.3d 259 (3d Cir. 2000).  However, ALJ Friedman used the Medical-Vocational Rules as a framework from which he concluded that, starting September 1, 2002, a significant amount of jobs did not exist in the national economy that Plaintiff could perform.  (Tr. 17.)  Accordingly, ALJ Friedman concluded that Plaintiff was only disabled under the Social Security Act and the Regulations after September 1, 2002.  (<u>Id.</u>)

**E.     Analysis**

Plaintiff contends that ALJ Friedman's decision should be reversed and Plaintiff should be awarded Supplemental Security Income Benefits or, in the alternative, this Court should remand this decision for reconsideration because ALJ Friedman's decision was not supported by substantial evidence.  (Pl.'s Mem. L. at 1.)  Although the ALJ determined that Plaintiff was disabled beginning September 1, 2002, Plaintiff contends that her disability began January 28, 2002.  Plaintiff argues that: 1) ALJ Friedman failed to take into account the medical evidence that substantiates severe psychiatric impairments prior to September 1, 2002 (<u>Id.</u> at 9); 2) ALJ Friedman erroneously relied on the Medical-Vocational Rules to direct a finding of non-disability (<u>Id.</u> at 15); and 3) ALJ Friedman failed to recognize that Plaintiff meets listings 14.02A6 and 14.06B of the Commissioner's Listings of Impairments.  (<u>Id.</u> at 19.)

**1.     Did the ALJ Err in Failing to Take into Account the Medical Evidence that Substantiates Severe Psychiatric Impairments Prior to September 1, 2002?**

Plaintiff contends that ALJ Friedman failed to elicit the opinion of a psychiatric medical advisor as is required in cases in which the date of onset of claimant's impairment is unclear.

16

(Id. at 11.)  However, this only constitutes reversible error if ALJ Friedman's finding that Plaintiff was not disabled by a severe psychiatric impairment during the period between January 28, 2002 and September 1, 2002 is not supported by substantial evidence.  This Court finds that ALJ Friedman's determination is supported by substantial evidence.

Plaintiff's allegation of disability in her initial application for disability benefits does not cite mental impairments.  Plaintiff contends that she has suffered from depression for over 10 years, yet no mention of psychiatric impairments appears in the record until the examinations by Dr. Merlin on May 14 and May 31, 2002.  (Tr. 77-78, 84-85.)  Dr. Merlin's diagnosis was that Plaintiff suffered from depression, which manifested itself in crying spells, insomnia, and loss of concentration.  (Tr 84-85.)  Although Dr. Merlin recommended that Plaintiff be evaluated by a psychiatrist, he also noted that Plaintiff was not taking any medication for her alleged depression, was not examined or followed by a psychiatrist, and had never been hospitalized.  (Tr. 78, 84.) The record next shows that Plaintiff was evaluated by a psychiatrist at the Jersey City Medical Center on September 23, 2002.  (Tr.  113-115.)  Plaintiff was diagnosed as suffering from depression and anxiety.  (Id.)

As evidence of a psychiatric impairment prior to September 1, 2002, Plaintiff points to a May 14, 2002 consultative examination at which Dr. Merlin observed that Plaintiff appeared depressed, as well as Dr. Abubakar's prescribing Zoloft, an anti-depressant, in July 2002.  (Tr. 85, 113.)  However, at step three, the ALJ found that Plaintiff did not meet the criteria of any mental impairment listing because Plaintiff had no "marked restrictions of activities of daily living or marked difficulties in maintaining social functioning, concentration, persistence or pace."  (Tr. 15.)  While the evidence Plaintiff points to supports an inference that she was depressed prior to September of 2002, it does not provide evidence that the depression was

17

disabling.

Although Plaintiff contends that there is significant evidence to support her allegation, ALJ Friedman's finding that Plaintiff was not disabled by a psychiatric impairment prior to September 1, 2002 is supported by substantial evidence.  ALJ Friedman clearly explains what evidence is in the record to support his findings.  The ALJ is not required to adhere to a particular format, but must present sufficient evidence and analysis.  Rivera, 2006 U.S. App. LEXIS 2372, at *3.  ALJ Friedman's decision regarding Plaintiff's psychiatric impairment claim meets this standard.


2.      **Did ALJ Friedman Err by relying on the Medical-Vocational Rules to Direct a Finding of Non-Disability?**

Plaintiff claims that ALJ Friedman erroneously relied on the Medical-Vocational Rules to direct a finding of non-disability for the period of January 28, 2002, through September 1, 2002. Plaintiff contends that, prior to September 1, 2002, there was evidence of nonexertional impairments.  (Pl.'s Mem. L. at 16-17.)  As a result, ALJ Friedman was required to call a vocational expert, rather than relying on the Medical-Vocational grids, because the grids can only be used with exertional impairments.  See Gilliland, 786 F.2d 178; Jesurum, 48 F.3d 114; Sykes, 228 F.3d 259.  The holdings of these cases and the instructions for the Medical-Vocational guidelines require that, when a claimant's limitations are not physical, but rather are mental, the grids are not an appropriate source for determining whether there are jobs in the national economy that the claimant can perform.

This only constitutes reversible error if the ALJ Friedman's determination that Plaintiff had no nonexertional limitations during the period of January 28, 2002 and August, 31, 2002 is

not supported by substantial evidence.  As discussed in the preceding section, the ALJ's

determination that Plaintiff was not suffering from a psychiatric impairment prior to September

1, 2002 is supported by substantial evidence.  Thus, the use of the grids was appropriate.  The

requirements in Sykes are inapplicable when there is no objective medical evidence of a

nonexertional limitation.  Since the medical evidence of record establishes that the Plaintiff did

not have a nonexertional limitation prior to September 1, 2002, Sykes is inapplicable.  Therefore,

Plaintiff's claim that the ALJ erred by utilizing the Medical-Vocational Rules is without merit.


   3.    **Did the ALJ Err in Failing to Recognize that Plaintiff Meets the Listing at 14.02A6 of the Commissioner's Listings of Impairments?**

Plaintiff argues that there is no evidence to support ALJ Friedman's finding[5] at step three

that Plaintiff fails to meet the meet the criteria of listing 14.02A6.  This only constitutes

reversible error if ALJ Friedman's determination is not supported by substantial evidence.  This

Court finds that the ALJ Friedman's determination that Plaintiff did not meet the criteria of

listing 14.02A6 is supported by substantial evidence.

In evaluating the severity of Plaintiff's lupus, ALJ Friedman considered Plaintiff's

subjective complaints of pain and disability, and the medical evidence available in the record.

---

[5]The ALJ summarized his step three finding as:

> The medical evidence indicates that the claimant has lupus and depression, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Listing 14.02.

(Tr. 15.)

(Tr. 15.)  Although the reports of Dr. Maiello, Dr. Merlin, and Dr. Candela establish muscle stiffness and joint pain from Plaintiff's lupus, (Tr. 71, 84, 105), ALJ Friedman found that a disabling degree of physical limitation is not supported by the objective evidence, and so Plaintiff's contention that she does meet or medically equal the impairment listing for lupus cannot be accepted.  (Tr. 15.)  Plaintiff has pointed to no evidence contradicting the ALJ's determination as to listing 14.02.

According to listing 14.02, Plaintiff would be presumed disabled if she suffered any of the asserted involvements to a required threshold level of severity, or had lesser involvement of two or more body systems with "significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss," with at least one body symptom involved to a moderate level.  20 C.F.R. Part 404, Subpart P, Appendix 2 , § 14.02(A)(B).  Plaintiff contends that she meets the requirement for a "digestive involvement," referring to the criteria in listing 5.00.  (Pl.'s Mem. of L. at 21.)  Plaintiff argues that she suffers from weight loss due to a gastrointestinal disorder, and thus, under listing 5.00, the "resultant interference with nutrition will be considered under the criteria in 5.08."  20 C.F.R. Part 404, Subpart P, Appendix 2, § 5.08(B).

Plaintiff argues that, because her weight of 91 pounds and height of 61 and a half inches fall between two levels on Table IV, she must be given the benefit of the doubt, and thus meets the requirements under the criteria in 5.08, Table IV.  (Pl.'s Mem. of L. at 21.)  However, in order to meet the requirements under 5.08, Plaintiff must also satisfy one of the criteria under 5.08B(1)-(7).  Plaintiff has not argued, no less shown, that she meets all the criteria under listing 5.08 for a finding of weight loss due to a persisting gastrointestinal disorder.  Thus, Plaintiff cannot persuade that, under listing 5.08, her weight loss is sufficient to satisfy the weight loss

requirement of listing 14.02.  Accordingly, this Court finds no error in ALJ Friedman's use of listing 14.02.

## **CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: September 11, 2006

                              S/Joseph A. Greenaway, Jr.
                              JOSEPH A. GREENAWAY, JR., U.S.D.J.